UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

JAMES T. HOGWOOD,                    ]
                                     ]
    Plaintiff,                       ]
                                     ]
vs.                                  ]     5:09-CV-2119-LSC
                                     ]
MICHAEL J. ASTRUE,                   ]
Commissioner,                        ]
Social Security Administration,      ]
                                     ]
    Defendant.                       ]

MEMORANDUM OF OPINION

I.   Introduction.

Plaintiff, James T. Hogwood, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Mr. Hogwood timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Hogwood was forty-six years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a ninth grade education. (Tr. at

27-28.)  His past work experience includes employment as an auto mechanic and truck driver.  (Doc. 7 at 4, Tr. at 45.)  Mr. Hogwood claims that he became disabled on February 24, 2006, due to a car accident, degenerative disc disease with lumbar radiculopathy, personality disorder, major depression, hypertension, chronic daily headaches, migraine headaches, history of blackout spells, history of seizure disorder, lightheadedness and orthostatic hypotension since 2007, and problems with memory and concentration.  (Doc. 7 at 4, Tr. at 125, 150.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements

before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. (*Id.*) If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id*. If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id*. Step five requires the court to consider the

claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Mr. Hogwood "met the insured status requirements of the Social Security Act through the date of [his] decision." (Tr. at 12.) He further determined that Mr. Hogwood had not engaged in substantial gainful activity since the alleged onset of his disability. *Id*. According to the ALJ, Plaintiff's history of seizures, headaches, back pain with a history of lumbar decompression, substance addiction, and affective mood disorder are considered "severe" based on the requirements set forth in the regulations. *Id*. However, he found that Plaintiff did not have an impairment or combination of impairments that either met or medically equaled any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id*. The ALJ determined that Mr. Hogwood has the residual functional capacity to perform medium work, "performing short simple tasks, but no detailed tasks. He would have attention spans of two hour periods across an 8 hour workday and

can tolerate non-intense interactions with the public.  Changes should be introduced slowly and gradually." *Id*. at 13.

The ALJ then determined that Plaintiff "is unable to perform any past relevant work."  (Tr. at 17.)  Based on Plaintiff's age, education, work experience, and RFC, the ALJ found jobs that exist in significant numbers in the national economy that Plaintiff can perform.  These jobs include: work as an auto body worker (2,000 jobs regionally; 50,000 nationally); a busboy (3,000 regionally; 100,000 nationally); and a kitchen helper (4,000 regionally; 150,000 nationally).  *Id*. at 17-18.  Accordingly, the ALJ entered a finding that Plaintiff has "not been under a disability, as defined in the Social Security Act, from February 22, 2006 through the date of this decision." *Id*. at 18.

II.   Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971);

*Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal.

*See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.     Discussion.

Mr. Hogwood alleges that the ALJ's decision should be reversed because it is not supported by substantial evidence and applicable law for one reason. (Doc. 7 at 10-14.) Plaintiff claims the "ALJ did not properly consider the opinions of his two treating psychiatrists, Dr. McDonough and Dr. Boxley, and that the ALJ improperly substituted his own opinion for that of Plaintiff's treating physicians." *Id*. at 10.

The ALJ affords a physician's testimony "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon: the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Furthermore, "good cause" exists for an ALJ to give substantially less weight to a treating physician's opinion when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440).

Additionally, this Court is aware that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court weighs doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his condition." *Lewis*, 125 F.3d at 1440. Such physician's opinions are relevant to the ALJ's findings, but they are not determinative, since the ALJ bears the responsibility for assessing a claimant's RFC. *See e.g.*, 20 C.F.R. § 404.1546(c).

In the instant case, although Plaintiff refers to Dr. Sarah Boxley as a treating physician, Dr. Boxley only examined Plaintiff once. (Tr. at 487-88.) On August 14, 2008, Dr. Boxley noted that Plaintiff suffered from recurrent major depressive mood and alcohol abuse, however these diagnoses were "Per Client Report." *Id*. at 487. Further, she noted Plaintiff's Global Assessment of Functioning ("GAF") to be a 52, indicating moderate symptoms. *Id*. at 488. Despite the fact that Dr. Boxley's diagnoses were based on Plaintiff's own report, and the finding of only moderate symptoms, Dr. Boxley indicated to Plaintiff's attorney, in an undated letter, that she believed Plaintiff was unable to work (Tr. at 498). Thus, not only is Dr. Boxley not one of Plaintiff's treating physicians, even if she were, her opinion is conclusory and inconsistent with her own medical records. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *Phillips*, 357 F.3d at 1241.

As for Dr. Daniel McDonough, he was one of Plaintiff's treating psychiatrists. (Tr. at 471-98.) However, the ALJ determined that little weight should be given to Dr. McDonough's opinion that Plaintiff was "completely disabled psychiatrically and it would be doubtful if he would be able to return to work ever, particularly since his psychiatric problems

stemmed from his chronic medical condition which has a poor prognosis itself." *Id*. at 16, 484. The ALJ found Dr. McDonough's statement to be inconsistent with the treatment he provided Plaintiff. Further, the ALJ found Plaintiff had no chronic medical condition. *Id*. at 16.

Other than the statement itself, there is nothing in Dr. McDonough's records to indicate that Plaintiff is "completely disabled psychiatrically." *Id*. at 484. Dr. McDonough treated Plaintiff at Mountain Lakes Behavioral Healthcare ("Mountain Lakes") from September 2006 to August 2008. (Tr. at 471-97.) Based on the record, it appears Dr. McDonough treated Plaintiff for his depression and personality disorder primarily with various medications. *Id*. However, while receiving treatment at Mountain Lakes, Plaintiff was "not compliant" with his medication regimen on at least two occasions. *Id*. at 474, 476. Although Plaintiff contends this was due to cost, in discussing Plaintiff's non-compliance with counseling also allegedly because of the cost, the ALJ noted Plaintiff's reported habits of smoking two packs of cigarettes a day and drinking a 12-pack of beer a week and the cost associated with said habits. *Id*. at 14. Additionally, the record indicates Plaintiff did not show for appointments with Dr. McDonough on August 13, 2007, and on April 21, 2008,

although no reason is given for Plaintiff's absence on those dates. *Id*. at 486.

Regardless, the record indicates Plaintiff gradually improved. When Plaintiff first began treatment at Mountain Lakes in 2006, his GAF score was 52, indicating only "moderate symptoms or moderate difficulty in social occupational, or school functioning." (Tr. at 15, 489.) Although, as Plaintiff notes, he had a GAF score of 40 in February 2007 and a GAF score of 50 in October 2007, indicating serious symptoms (*Id*. at 471, 477), the record indicates he was "[d]oing relatively well across the board" by January 2008 (*Id*. at 483). The ALJ noted that the record has no reports from Plaintiff that he suffered from "significant difficulties or significant limitations due to his psychological problems." *Id*. at 15. Further, in August 2008, Dr. Boxley reported Plaintiff's GAF score was back up to a 52. *Id*. at 15, 488.

While Dr. McDonough determined Plaintiff would be unable to return to work, "particularly since his psychiatric problems stem from his chronic medical conditions, which has a poor prognosis itself" (Tr. at 484), the ALJ correctly noted that Plaintiff is not suffering from a chronic medical condition (*Id*. at 16). Plaintiff sought treatment from Dr. Stephen Green from September 2004 through February 2008. *Id*. at 253-96, 441-64. Dr.

Green made note on several occasions of Plaintiff's abuse of medications.[1] *Id.* at 261-62, 264, 456, 458, 462, 464. For example, in April 2006, Plaintiff complained of migraine headaches and daily chronic headaches and claimed that darvocet was the only thing that helped. However, Dr. Green noted that Plaintiff had a history of mixing darvocet with alcohol. Further, Dr. Green suspected addiction problems because Plaintiff constantly called in for more meds when on narcotics. In fact, he informed Plaintiff on numerous occasions that he had "nothing more to offer and he must see a neurologist." *Id.* at 261. Dr. Green concluded his April 2006 report with the statement, "[i]f he does continue to take the medicines as he wishes instead of as prescribed, he has been warned that he will be fired as a patient." *Id.* In April 2007 and December 2007, Dr. Green noted that treatment was improving Plaintiff's headaches. From December 2007 through February 2008, there is no further evidence in Dr. Green's records of reported headaches. *Id.* at 15, 441-64.

As Dr. Green requested, Plaintiff did seek treatment from a neurologist, Dr. Alapati Anjaneyulu, in July 2006. (Tr. at 336-42). Dr.

---

[1] The ALJ noted there was no evidence that Plaintiff suffered from any significant limitations resulting from substance abuse. (Tr. at 15.)

Anjaneyulu's records indicate, and the ALJ noted, that a CT scan of Plaintiff's head was normal and an EEG showed no epileptiform abnormalities. *Id*. at 15, 336-42. In August 2006, Dr. Anjaneyulu's follow-up note indicated that Plaintiff was asking for prescriptions of Valium and Ultram, but Dr. Anjaneyulu warned Plaintiff not to take those types of medications because they are addictive. Plaintiff was instructed to follow up in three months, however there are no records to indicate that he did so. *Id*. at 342.

The ALJ also noted Plaintiff's history of back pain with evidence of lumbar decompression. (Tr. at 14, 275-80, 357-64, 397-98). However, based on a November 30, 2006 orthopedic evaluation, performed by Dr. Morris Seymour, the ALJ noted the following: Plaintiff had average muscle development and erect posture; his gait was normal and without signs of trauma or masses; no deformity in his shoulders, pelvis, knees, ankles, or feet; range of motion showed no significant limitations; negative cross and straight leg raising tests bilaterally; motor strength of 5/5; and no evidence of instability with some slight disc space height loss. *Id*. at 14, 397-98. Dr. Seymour found Plaintiff's head injuries were the main reason he had not

returned to work.  *Id*.  From the record, it does not appear that Plaintiff continued to report major problems stemming from his back pain.  *Id*. at 14.

Further, the ALJ gave "considerable weight" to the opinion of the state agency medical consultant who, in December 2006, found Plaintiff's physical impairments would not result in disabling limitations.  *Id*. at 16.  The ALJ gave this opinion considerable weight as it was consistent with Plaintiff's treatment and with the findings of the consultative physical examination performed in December 2006, which showed normal range of motion in all areas tested, normal gait, straight leg raising test was positive on the left but deep tendon reflexes were equal bilaterally, and finger dexterity was within normal limits and a grip of 5/5.  *Id*. at 399-403.

Finally, the ALJ gave "considerable weight" to the consultative psychological evaluation performed by Dr. Mary Arnold on December 5, 2006.  (Tr. at 16, 405-08).  As noted by the ALJ, Dr. Arnold found no significant functional limitations because Plaintiff could take care of his personal needs and grocery shop.  Dr. Arnold diagnosed Plaintiff with alcohol dependence in early partial remission, adjustment disorder with depressed mood, and a personality disorder.  Lastly, she determined Plaintiff's GAF score was 58,

indicative of only moderate symptoms related to his mental functioning. *Id.*

There is nothing in the record to indicate that Plaintiff suffered from any "chronic medical conditions" as opined by Dr. McDonough. As discussed above, the ALJ gave proper consideration to all of Plaintiff's physicians, including Dr. Boxley and Dr. McDonough. Thus, the ALJ's opinion was supported by substantial evidence and applicable law.

IV.   Conclusion.

Because the Court finds that the Commissioner's final decision applies the proper legal standards and is supported by substantial evidence, the decision of the Commissioner will be affirmed by separate order.

Done this 1st day of February 2011.

                                                L. SCOTT COOGLER
                                           UNITED STATES DISTRICT JUDGE
                                                                        153671